## LYDIA B. DEAN *vs.* ABRAM SKIFF.

Bristol.    Oct. 29, 1879. — Jan. 19, 1880.    COLT & AMES, JJ., absent.

In an action by a woman for breach of a promise of marriage, alleged to have been made in 1875, rescinded by mutual consent in 1878, and renewed the same year, the answer admitted the making of the contract in 1875 and its rescission, but denied its renewal.  *Held*, that the plaintiff had no ground of exception to the rejection of evidence, offered by her, that in 1839 and 1840 she and the defendant were attached to each other, but not engaged to be married; that each soon after married another person; and that, while so married, there were friendly relations between them.    .

In an action for breach of a promise of marriage, the plaintiff's evidence tended to show a written contract, a subsequent rescission of it by mutual consent, and an oral renewal of it.   The jury were instructed that evidence of an express promise of marriage was not necessary to prove a contract to marry; that the renewing of a contract to marry, which has been once released, must be proved by the same evidence, in kind and amount, required to prove an original and the same promise to marry by and between the same parties.  *Held*, that the instruction was not open to the criticism that it required the new promise to be in writing.

In an action on a promissory note, by which the defendant agreed to pay the plaintiff a certain sum the day he was married, it appeared that the parties, on the day of the date of the note, signed another paper by which they agreed to live together so long as they should live, and to marry as soon as they should think it safe on account of an old engagement of the defendant; and there was evidence that the agreements were afterwards rescinded by mutual consent, and the defendant married the person to whom he had been formerly engaged. The plaintiff asked the judge to rule, that, if a valuable consideration was shown, this was sufficient, however inadequate; that this with the consideration of love and affection would be a valid consideration.  The judge declined so to rule, and instructed the jury that, if the note was made and delivered in consideration of an existing promise of marriage, and an agreement that he would pay the amount stated, as a penalty for not fulfilling that promise on his marriage to another, there was a legal consideration for the note, and the plaintiff might recover, if it was not subsequently released.  *Held*, that the plaintiff had no ground of exception.

A man signed and delivered a promissory note, by which he agreed to pay a woman a certain sum on the day he was married.   On the same day, both signed an agreement by which they agreed to live together and to take care of each other as long as they should live, and to marry as soon as they should think it safe on account of an old engagement of the man.   Subsequently, after a full conference, the following papers written by a magistrate at the dictation of the woman, were signed: 1st, a receipt by the man in full of all services rendered by him to the woman; 2d, a release of the man by the woman from the promise of marriage, and an agreement not to interfere with his marrying any one else, by bringing suit against him; 3d, a receipt by the woman of the man, in full to date, for her services as housekeeper.  *Held*, in an action by the woman against the man for breach of the two agreements first made, that

she had no ground of exception to the submission of the question to the jury whether these agreements were not intended by the parties to be annulled by those subsequently made.

If the parties to an executory contract of marriage mutually release each other from its performance, and subsequently enter into a new contract of marriage, this does not annul the release of the former contract.

A man and a woman executed a written agreement by the terms of which they agreed to live with each other as long as they both should live, to take care of each other, and to marry as soon as they should think it safe on account of an old engagement. Subsequently the woman released the man from the promise of marriage, and agreed not to interfere with his marrying any one else. The man thereupon married another woman. *Held,* that the release was necessarily an abrogation of the former contract.

CONTRACT in three counts. The first count alleged that the plaintiff and the defendant mutually agreed and promised to marry each other; that the plaintiff had always been ready to marry the defendant, but the defendant refused to perform his promise.

The second count alleged that the defendant entered into the following contract with the plaintiff: "Long Plain, Sept. 4, 1875. For value received, I promise to pay Lydia B. Dean one thousand dollars the day I am married. Abram Skiff;" that the defendant had, since the date of said contract, married a person other than the plaintiff, whereby the defendant owed the plaintiff the sum of $1000, and interest thereon.

The third count alleged that the defendant entered into the following contract with the plaintiff, signed by both parties: "Long Plain, Sept. 4, 1875. This is an agreement between me, Abram Skiff, and Lydia B. Dean, that we have agreed this day, the fourth day of Sept. 1875, to live with each other as long as we both live, I, Abram Skiff, to take care of her, Lydia B. Dean, in sickness and health. I, Lydia B. Dean, to take care of Abram Skiff in sickness and health, and do his house-work the same as his wife, and buy and sell the same as his wife, and to marry each other as soon as we think best and safe on account of an old engagement;" that the plaintiff had ever since been ready and willing to comply with, and conform to, the terms thereof, and nad complied with, and conformed to, the terms thereof, so far as she was allowed to do by the defendant; that on or about January 25, 1878, the defendant, with the plaintiff's consent, did annul a part of said contract, to wit, the part set out in these

words: "and to marry each other as soon as we think best and safe on account of an old engagement;" that the plaintiff and defendant, after said January 25, mutually promised to marry each other, and did so far renew the contract of September 4; that the plaintiff has always been ready and willing to marry the defendant, but the defendant refused to perform his promise, and had, since said promise was made, married another person; that the defendant had refused to comply with and perform his contract of September 4, in every part thereof; that the plaintiff had been ready and willing to perform said contract, and had complied with and performed the terms of said contract, in every part, so far as she had been allowed to do by the defendant.

The answer admitted the making of a contract of marriage, as alleged in the first count; and averred that subsequently the plaintiff absolved, exonerated and discharged the defendant therefrom; and that the contract was rescinded by the plaintiff and defendant. The answer also denied the genuineness of the defendant's signature to the contract set up in the second count; alleged that, if written by the defendant, it was procured by the plaintiff's fraud; and that the contract was without consideration. The answer to the third count contained a general denial, and specifically denied the genuineness of the defendant's signature to the contract set up in that count; alleged that, if written by the defendant, it was procured by the plaintiff's fraud; denied that the contract was modified as alleged; and averred that, if there was any contract of marriage in modification of the written agreement, the defendant was discharged therefrom by the plaintiff.

Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

The plaintiff's evidence tended to prove that she and the defendant became acquainted in 1839; that subsequently they each married another person, and that the plaintiff's husband died July 30, 1873, and the defendant's wife before 1875.

The plaintiff then, for the purpose of showing the probability that in 1875 the defendant and plaintiff, being then unmarried, would make a contract of marriage, and as competent evidence to support all of the three counts of the declaration, offered evidence tending to show that in 1839 and 1840 the plaintiff and the defend-

ant were unmarried and attached to each other, but not under any engagement of marriage, and that during their married life the plaintiff saw the defendant, and that there were friendly relations between the plaintiff and her husband, and the defendant and his wife, during their married life, and that calls were exchanged between them. The judge excluded this evidence.

The plaintiff also offered evidence tending to prove that in May 1875 their acquaintance was renewed, at the defendant's house in Acushnet, and the defendant agreed with the plaintiff that she should keep his house; that thereupon she came to the defendant's house in Acushnet from Taunton and became his housekeeper ; that in June 1875 the defendant informed the plaintiff that he had put an end to an engagement to marry, which he had made with one Lucinda Taber, and he agreed to marry the plaintiff, and arrangements were made by them for their marriage at Taunton, whither she went for that purpose in July 1875 ; that afterwards they agreed to defer their marriage, at the defendant's suggestion, by reason of fear on account of the old engagement, and the plaintiff returned to Acushnet as the housekeeper of the defendant in July 1875 ; that the defendant afterwards made divers statements and promises to the plaintiff as to what he would do for her, in case of his death, and in consequence of deferring their marriage, and in consideration of her services in keeping his house, and, after many talks of that kind, signed the papers declared on in the second and third counts of the declaration, which were drawn by the plaintiff, and the plaintiff thereafterwards continued to live with the defendant as his housekeeper, according to the terms of the paper declared on in the third count, until January 26, 1878, when the defendant required her to leave his house, and refused to further support her.

The defendant, admitting by his answer and by his counsel that there was an implied promise to marry the plaintiff prior to January 26, 1878, offered evidence tending to prove that he never made any express or specific promise to marry the plaintiff ; that he only agreed that, if she was a good housekeeper, was a suitable person for a wife, and he liked her, he might some time marry her ; that he never signed the papers declared on in the second and third counts, knowing their contents, and never made any such contracts with the plaintiff, and that he could not write any-

thing but his name; but he admitted the signatures to be his own handwriting, and offered evidence to show how the plaintiff had procured his name to be written on these papers when nothing was written above his name.

The plaintiff then put in evidence four papers, all dated, Acushnet, January 25, 1878. The first, signed by the defendant, purported to be a receipt of $24 from the plaintiff, for board of one Elmer L. Bouldy. The second, also signed by the defendant, was as follows: " This is to certify that I have received this day the sum of one dollar in full of all services rendered to Mrs. Lydia B. Dean for the term of two years and eight months last past, and for the moving of my goods to Taunton, including horse hire." The third, signed by the plaintiff, was as follows: " This is to certify that I, Lydia B. Dean, single woman, now resident of Acushnet, in the county of Bristol and Commonwealth of Massachusetts, release Abram Skiff, of Acushnet, from promise of marriage to or with me, and will not in any way interfere with his marrying to other parties by bringing suit or otherwise against him." The fourth, also signed by the plaintiff, was as follows: " Received of Abram Skiff the sum of one hundred dollars in full of my services as housekeeper during the term of two years and eight months last past, namely, commencing May 16, 1875, to date."

These papers were drawn by Benjamin White, a magistrate, after a long and full conference of both the plaintiff and the defendant concerning their affairs in his presence, and by the dictation of the plaintiff after the defendant had left. They were afterwards read by the plaintiff to the defendant, and were severally signed by them the day following, after which the $100 named in the last paper was received by the plaintiff. The plaintiff contended that these releases and receipts contained the specific things which she and the defendant agreed to settle, and that no further settlement was had. The defendant testified that all demands that the plaintiff and defendant had against each other were then settled in full, and that he signed the several papers in full settlement of all matters between them.

The plaintiff offered evidence tending to prove that, after January 26, 1878, the plaintiff and the defendant renewed their

mutual promise to marry each other. The defendant denied this.

It appeared in evidence that, on February 14, 1878, the defendant married Lucinda Taber, the person whom he had agreed to marry previous to May 1875.

The plaintiff requested the judge to give certain instructions to the jury, of which the following need only now be stated : "1. Evidence of an express promise is not required. The conduct and deportment of the parties, and such circumstances as usually do or naturally would accompany the entering into such a contract, may furnish satisfactory evidence that such a contract has been entered into or renewed after such a contract has been interrupted or rescinded. 2. If a valuable consideration is shown, this is sufficient, however inadequate it may appear to be. This with the consideration of love and affection would furnish a good and valid consideration in law, to meet the term "value received" in the agreement declared on in the second count; and if the jury believe that the. defendant signed this paper with the knowledge of its contents, and any valuable consideration whatever existed therefor, whatever the measure may be, then the liability to pay became absolute at the time specified therein, to wit, on the day the defendant married. 3. If the jury believe that the defendant signed this paper with a knowledge of its contents, the release of the defendant by the plaintiff from a promise to marry, or from prosecuting or molesting him for marrying another, does not release him from his agreement to pay the plaintiff one thousand dollars the day he is married. 4. The release given by the plaintiff to the defendant from the promise of marriage did not release the defendant from the other obligations which the defendant assumed according to the terms of the paper declared on in the third count, and if the jury believe that the defendant signed this paper with a knowledge of its contents, he is liable, notwithstanding such release, to take care of the plaintiff in sickness and health as long as she shall live; and his refusal to comply with such terms is sufficient grounds for this action. 5. If the jury shall believe that the defendant, subsequent to the date of the written release from the promise to marry, renewed his engagement to marry the plaintiff, either in express terms, or by actions which would reasonably imply such

a renewal, this would cancel and annul such written release. 6. The receipt given in evidence is a release of any claims which are included in its terms, but it is only *prima facie* evidence of such a release, and if it appears, either from its terms or from the evidence offered, that any claim of the plaintiff upon the defendant was not by the joint agreement of the parties included in the terms of such receipt, then the receipt does not apply to any such claims not so included.

The judge declined so to instruct the jury; and instructed them on these points as follows:

" Evidence of an express promise of marriage is not necessary to prove a contract to marry. If the association and conduct of a man and woman, and the circumstances attending all their relations, are such as naturally and ordinarily accompany a mutual understanding relied upon by each that they are to be married each to the other, these facts are appropriate and competent evidence to prove a contract to marry by such persons.

" A contract to marry each other by a man and woman once made may be discharged and released by their mutual consent and agreement, and thereupon both are relieved of all obligation to fulfil such contract to marry.

" The resuming by a man and woman of a contract to marry which has been once entirely discharged or released must be proved by the same evidence, in kind and amount, required to prove an original and the same promise to marry, by and between the same parties.

" The receipts and releases of January 25, 1878, are not decisive evidence that all the preëxisting relations and obligations between the plaintiff and defendant, having reference to their marriage or mutual services, were on that day settled and determined. These receipts and releases, considered alone, in and of themselves, state a final settlement between the plaintiff and defendant of all the matters specified, or in terms comprehended, in the words of these receipts and releases. Either the plaintiff or defendant may prove, that, by their understanding, the receipts and releases were intended to include or exclude, and did include or exclude, matters between them not referred to in these receipts and releases, or comprehended in their terms. In determining the scope of these receipts and releases, the jury

may consider the circumstances, considerations, motives, purposes, conduct and understanding of the parties, when the releases were made or directed to be made ; and among these circumstances an important one is the fact, that such releases were written upon the dictation of the plaintiff, in the defendant's absence, and that the defendant, being unable to read or write, knew nothing of such releases and receipts except what was read or told to him by the plaintiff.

"If the jury find that the defendant has broken his contract, and not acted in good faith toward the plaintiff, she is entitled to recover damages, to be computed on the principal of indemnity and reasonable compensation, and not in any event as a penalty, or as vindictive damages.

"If the jury are satisfied that the plaintiff and defendant intended, by their mutual receipts and releases, each to discharge the other from all claims or obligations which they had made or acknowledged, prior thereto, or which had arisen out of their association with each other from April 1875 to January 25, 1878, they would be authorized to find that such receipts and releases comprehended, by the intention of the parties, in whatever general terms expressed, the discharge and release of the contracts of September 4, 1875.

" The contract declared on in the third count is not to be considered by the jury as constituting a cause of action for damages by the plaintiff, by the marriage of the defendant to a person with whom he had that old engagement to marry stated in such contract, or to any other person ; but that contract may be considered by the jury as tending to prove that the defendant, on September 4, 1875, had promised, either absolutely or conditionally, to marry the plaintiff.

"If the defendant's promissory note of September 4, 1875, was made and delivered to the plaintiff, in consideration of an existing promise by him to marry her, and an agreement that he would pay her the sum of $1000, as a penalty for not fulfilling that promise at the time of his marriage to another, there was a legal consideration for that promissory note; and the plaintiff may recover upon it, in this action, provided it was not released and discharged by their transaction of January 25, 1878."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*C. A. Reed*, for the plaintiff

*G. Marston*, for the defendant.

LORD, J. 1. The first exception which we are called upon to consider is whether the court erred in refusing to admit testimony of the kindly relations between these parties in the year 1839, and during subsequent years up to the year 1875. The case finds that in 1839 neither of the parties was married, but that each was subsequently married to another person, and the evidence offered was that the plaintiff and the defendant, before their several marriages, had kindly feelings toward each other, and, during their married lives, the two families interchanged friendly visits. If there were nothing else to show that the presiding judge might properly in his discretion regard the evidence as too remote, the fact that the defendant by his answer admitted that he entered into a contract of marriage would of itself justify the rejection of evidence which could have no other bearing than to show a probability that the defendant would enter into a contract, which, upon the record, he admits that he did enter into. The evidence offered would have no tendency to prove any particular contract, either as to time or circumstances. It could only tend to prove a contract of some kind, at some time subsequent to the relations. When such a contract is admitted, all the consequences follow. But, upon the rescission of such contract, the same evidence cannot be competent to prove a renewal.

The fact that the rejection of the evidence is sustained for these reasons is not to be regarded as an intimation that under any circumstances the relations in early life between a man and a woman, who have each been married to another, would have any tendency to prove a promise of marriage between them when they have both been widowed after a married life extending through more than thirty years.

Nor do we mean to have it understood that we do not regard as sound the proposition of the defendant's counsel respecting the evidence offered and rejected, of the relations of the parties during their married life: "If the relations and calls were merely friendly and proper, they mean nothing in this respect; and if they were anything else, they were contrary to law and public policy, and cannot be put in evidence."

2. The next exception taken by the plaintiff's counsel is to this instruction : " The resuming by a man and woman of a contract to marry which has been once entirely discharged or released must be proved by the same evidence, in kind and amount, required to prove an original and the same promise to marry, by and between the same parties."

The criticism upon this ruling made by the plaintiff's counsel is unreasonable. The suggestion that, by this ruling, if an original written contract of marriage had been rescinded by the parties, no other contract of marriage can be proved to exist between them, except by another writing, is wholly unfounded. The court had immediately before said to the jury : " Evidence of an express promise of marriage is not necessary to prove a contract to marry. If the association and conduct of a man and woman, and the circumstances attending all their relations, are such as naturally and ordinarily accompany a mutual understanding relied upon by each that they are to be married each to the other, these facts are appropriate and competent evidence to prove a contract to marry by such persons."

The case finds that the plaintiff, on January 25, 1878, released the defendant from his promise of marriage to her, and that the defendant married Lucinda Taber on February 14, 1878; and the plaintiff's claim was that, after the release which she gave on January 25, and before the defendant's marriage on Febuary 14, he entered into a new contract of marriage with her; and it was to meet this phase of the case that the court was called upon to instruct the jury as to the evidence required to prove a new contract of marriage, and, instead of repeating the carefully prepared statement which he had just given to the jury of what was sufficient to prove a mutual engagement to marry, he in substance referred the jury to that previous instruction as being applicable as well to a new promise to marry after a previous promise had been released, as to an original contract. By that instruction, he had told the jury the kind and amount of evidence necessary to establish the existence of a contract; and there was no error in thus referring to his original instruction for the purpose of instructing the jury as to the evidence necessary to establish a new contract. Whether, under the peculiar circumstances of this case, in which it appeared in writing that the original con-

tract of marriage between these parties was qualified by a prior engagement of marriage with Lucinda Taber, and that the plaintiff, on January 25, released the defendant from his promise to her, and stipulated not to bring a suit against him for marrying any other woman, and the defendant within three weeks married the woman to whom he was engaged to be married before his contract with the plaintiff, the presiding judge might not have expressed the rules applicable to such a case in more stringent terms, we have no occasion to inquire. Certainly, the excepting party has no cause for complaint.

3. The next exception is to the instructions which the court gave and refused to give in relation to the paper declared on in the second count.

There was another paper bearing date the same day, and presumed to be executed at the same time, and to be a part of the same transaction, which was signed by both the defendant and the plaintiff; and, inasmuch as it is clear that both papers relate to the same subject, and were executed at the same time, they are to be construed together. The court below was not called upon by either party to give construction to those instruments, nor, upon this bill of exceptions, are we. It is enough to say that the instructions were sufficiently favorable to the plaintiff.

The request of the plaintiff's counsel for instruction on this paper was that, if a valuable consideration is shown, such consideration, with love and affection, would be a good and valid consideration in law. It will be observed that the counsel did not ask the court to instruct the jury as to what would constitute a valuable consideration sufficient to support a promise, and although now, in the argument of the cause, certain matters are suggested which it is contended would be a valuable consideration for the note, yet the attention of the court was not called to them at the trial, and the instruction which the court in fact gave was sufficiently favorable to the plaintiff. We do not understand the presiding judge to have used the phrase "penalty," in the instruction given in its strictly technical sense, but to have used it in its more popular signification of liquidated damages. Examining the two papers of September 4 as one instrument to be construed together, it is quite obvious that the treating it, as between the parties, as in any sense an independent promissory

note containing in itself all the elements of a contract, and nothing else, was sufficiently favorable to the plaintiff, and especially as the presiding judge stated a consideration which he instructed the jury was a sufficient consideration, and no other consideration was suggested to him, nor was he asked to rule whether any specific consideration would be valid, or whether there was any evidence to support any other consideration.

4. The next exception of the plaintiff is to the instructions which the court gave in relation to the series of papers dated January 25, 1878, which are called receipts or releases. These papers were written by a magistrate. The plaintiff and the defendant had " a long and full conference concerning their affairs," in the presence of this magistrate. After that conference was ended, and the defendant had left the presence of the magistrate, these papers were written by him, as the bill of exceptions finds, " by the dictation of the plaintiff." By this phrase we do not understand that the plaintiff enunciated the precise words which the magistrate wrote, but rather that she communicated to the magistrate the particular receipts, releases and agreements, which he reduced to writing in such form as he thought would express the intention of the parties. It is immaterial, however, in what sense the word " dictation " is understood, for the instruments are to be construed by the language used under the rules of law applicable to such instruments. Receipts not under seal, whether called receipts or releases, or by whatever other name called, are not subject to the same rigid rules of construction as the written agreements of parties, but are open to explanation, and may be shown by parol to apply to subjects which are not expressed in them. In reference to these particular papers, the court instructed the jury what would be the natural and obvious meaning of the several phraseologies, and to this part of the instruction we do not understand any exception to be taken ; and he instructed the jury further that they were not decisive evidence that all the preëxisting relations and obligations between the plaintiff and defendant having reference to their marriage or mutual services were on that day settled and determined. This instruction was sufficiently favorable to the plaintiff.

A brief examination of the transactions of the two days, September 4, 1873, and January 25, 1878, will reveal a very striking

relation to each other and perhaps the idiosyncrasies of a single mind. On September 4, one of the papers executed was a mutual agreement between these two parties to take care of each other, and the services of each was the consideration for the services of the other, and no other consideration is referred to, and no other would be implied in law. There is, then, an engagement to marry each other, but it is qualified by the existing obstacle of a prior engagement upon the part of the defendant to marry another; and it is quite apparent that it was not deemed certain by the parties that this obstacle could be removed. In this view, the other paper becomes significant, which is a promise by the defendant to pay the plaintiff one thousand dollars on the day of his marriage. By the papers of January 25, 1878, it is evident that the same subjects were the matters of negotiation between the parties. The mutual contract by which each was to perform services to the other was settled and necessarily abandoned by the consent of the plaintiff that the defendant might marry another. The qualified or conditional arrangement to marry, made on September 4, was not only in terms released by the plaintiff, but there was a stipulation by her that she would not "interfere with his marrying to other parties by bringing suit or otherwise against him." Construing the two papers of September 4 together, and construing together the papers of January 25, it will be seen that they relate to the same subject-matter, and that the plaintiff has no right to complain that the court referred to the jury the question whether, by the intent of the parties, the settlement of January 25 was a final settlement, release and discharge of all the agreements of September 4. There was evidence of "a long and full conference of both the plaintiff and the defendant concerning their affairs," in the presence of a magistrate, and these papers were the result of that conference; and if, by the mutual understanding of the parties, that result was a full and perfect adjustment of all matters existing between them on that day, and an abrogation of all executory contracts between them, these papers were sufficient in form to express that conclusion; and if the presiding judge, instead of ruling as matter of law that this showed a final settlement, left the matter to the jury, who decided it rightly, the plaintiff has no cause of complaint.

5. The plaintiff now objects that it was error to refuse her fifth request for instructions. It is difficult to understand how the plaintiff could be prejudiced by an instruction, as to the effect of a renewal of the defendant's engagement to marry her, when the jury have found that there was in fact no such renewal. The request, however, was one which could not properly be given. If the parties to an executory contract mutually release each other from its performance, and subsequently enter into the same contract in form, it is the new contract which subsists between the parties, and the old one is as effectually discharged, released and abrogated as if the new one had not been entered into. As to the effect of the renewal of the contract, the court had already given sufficient instructions.

6. The plaintiff also insists that her fourth request for instructions should have been granted. Upon examining the bill of exceptions, we do not find that any evidence was offered upon the subject of the contract declared on in the third count, or that it was regarded by any one as a subsisting contract, or that any tender of performance was made under it, and, upon referring to the third count of the plaintiff's declaration, we find that the paper is set out in it, and it is alleged that the latter clause of it was, on January 25, 1878, abrogated; and then it is alleged that such agreement to marry was renewed, and the marriage of the defendant to another person was alleged as the breach of that contract, and no other breach was alleged, although there is in general terms an allegation of willingness to perform every part of said agreement. It is obvious that this case was tried wholly and solely upon the breach of a contract to marry. We do not understand that any evidence was offered, under the declaration, upon the paper, except the fact of its execution as described; and its effect, under all the circumstances of the case, was left to be determined by the jury under the instructions of the court. But, without regard to the question, whether properly raised or not, it is enough to say that the agreement declared on and the agreement of January 25 are so utterly inconsistent with each other and their coexistence would be so subversive of morality and decency that the agreement of January 25 is necessarily in law an abrogation of the contract declared on.

*Exceptions overruled.*